# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Richard A. Warren,
    Petitioner,

vs.                                Case No. 1:03cv786
                                         (Weber, S.J.; Hogan, M.J.)

United States of America, et al.,
    Respondents.

## REPORT AND RECOMMENDATION

Petitioner, who apparently was in federal custody residing in Cincinnati, Ohio on "supervised release" at the time the instant action commenced, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] In the petition, he challenges his 1994 conviction on charges of arson and other crimes in the United States District Court for the Eastern District of Kentucky. (*See* Docs. 1, 6). This matter is now before the Court on the petition, the government's response, petitioner's reply, and petitioner's additional submissions in support of the petition. (Docs. 1, 6, 9, 11, 15).

### Procedural Background

On February 10, 1993, a federal grand jury in the Eastern Division of Kentucky issued an 11-count indictment against petitioner, which included a charge in Count 11 that petitioner violated 18 U.S.C. § 844(i) by maliciously damaging and destroying "by means of fire" a building located in Kenton County, Kentucky that "was being used in an activity affecting interstate commerce." (Doc. 6, Ex. 1). A jury found petitioner guilty on the arson charge, as well as eight other counts. Petitioner was sentenced on February 10, 1994 to a 157-month term of imprisonment. (*Id.,* Ex. 2).

---

[1]Since the time he filed this action, petitioner moved to Louisiana, changing his address several times in that state.

Petitioner appealed his conviction to the United States Court of Appeals for the Sixth Circuit, which vacated petitioner's conviction on one count and remanded the matter for re-sentencing,[2] but affirmed petitioner's conviction on Count 11 and the other seven remaining counts. (*Id.,* Ex. 3). In its Opinion, issued September 14, 1995, the Sixth Circuit summarized the circumstances that led to petitioner's indictment and conviction as follows:

> In July 1986, defendant purchased a house on Musket Drive in Florence, Kentucky. A fire destroyed the house in March 1987. Arson investigators for defendant's insurer, State Farm Insurance Company (State Farm), determined the fire to have been accidental. Pursuant to the insurance policy, State Farm paid off defendant's mortgages, which totaled about $326,000. Defendant sued State Farm for additional money to which he claimed to be entitled under the policy. In settlement of his claim, State Farm allowed defendant to purchase a replacement house for a cost not to exceed $578,665.
>
> The settlement required defendant to live in the replacement house and maintain it as a single-family home. The settlement also stipulated that State Farm would pay defendant the difference between the value of the replacement home and the amount that State Farm paid to the Musket Drive mortgagees. The potential payout to defendant was $243,000. The settlement required defendant to purchase a replacement house before State Farm would pay him.
>
> In June 1989, defendant became interested in purchasing a home on Squire Hill Drive that belonged to Abraham and Pauline Sutton who were bankrupt. In July 1989, defendant met with Nick Benson, the Suttons' attorney, to discuss the possibility of buying the house. According to Benson's testimony at defendant's trial, defendant offered to buy the house. Defendant told Benson, however, that to succeed in his effort to pocket the proceeds from State Farm's payout to him, the Squire Hill house, which was listed at $424,000, would have to be appraised at a minimum of $579,000. Pauline Sutton testified that defendant, for the

---

[2] On remand from the Sixth Circuit, the district court reduced petitioner's prison sentence to 97 months on January 17, 1997. (Doc. 6, Ex. 4).

same reason, insisted that the Suttons raise the asking price to $675,000. The Suttons testified that defendant persuaded them to agree to a deal in which he would make a $251,000 down payment to the Suttons and would obtain a $424,000 mortgage for the balance of the purchase price. In spite of this written agreement, the Suttons were then to secretly return the $251,000 to defendant at closing. Defendant presented the written agreement to State Farm, which then appraised the house at $556,000. Because the appraisal value was lower than he had hoped, defendant convinced the Suttons to agree to reduce the total price to $661,000 and the down payment to $237,000. State Farm, based upon this second written contract, approved the final payout to defendant.

Defendant applied to Citibank Mortgage, Incorporated (CMI), for a mortgage in the amount of $424,000. In applying, he misrepresented the terms of the purchase agreement, his income, and his planned use of the house. After receiving via facsimile a copy of State Farm's check to defendant, CMI, in late August 1989, approved defendant's application and made the loan. Thomas Hufford, a CMI division credit manager and loan administrator, testified that CMI would not have made the loan had it not been misled by defendant's representations. The loan funds disbursed to defendant were insured by the Federal Deposit Insurance Company (FDIC).

According to trial testimony, in October 1989, defendant and the Suttons entered a secret contract that gave the Suttons the option to buy back the Squire Hill house. The Suttons paid defendant $237,000 for the option. The agreement entitled defendant to keep the $237,000 regardless of whether the Suttons exercised the option. The Suttons and defendant also entered a secret lease permitting the Suttons to reside in the home for six months for $1.00. State Farm officials testified that, had they known about the option contract and the $237,000 transfer from the Suttons to defendant, State Farm would not have approved the payout to defendant.

After closing on the Squire Hill house in late October 1989, defendant, through an insurance agent, applied to Chubb Insurance Company (Chubb) for homeowner's insurance for it. The application misrepresented defendant's intended use of the house and the magnitude

3

of the Musket Drive fire. A Chubb property inspector concluded that defendant had lied in his application and recommended the cancellation of the conditional policy that Chubb had issued. In response to Chubb's invitation to supplement the application, defendant made misrepresentations that persuaded Chubb to allow the policy to remain in force.

On April 30, 1990, a fire that was determined to have been intentionally set damaged the Squire Hill house. In late May 1990, police arrested Ted Huddleston, a tenant in one of the apartment buildings owned by defendant, for torching the house. He admitted setting the fire and said that defendant had hired him to do so in exchange for $3,000. He helped police monitor his subsequent conversations with defendant. During those conversations, defendant and Huddleston discussed Huddleston's compensation and planned a strategy.

During this same time, defendant filed a claim form with Chubb and submitted a sworn proof of loss form in which he denied being involved in burning the house. Because he refused to comply with Chubb's request that he be interviewed under oath, Chubb made no payments to defendant.

A federal grand jury indicted defendant on eleven counts relating to the Musket Drive and Squire Hill fires; the charges included, among others, arson, bank fraud, wire fraud, and mail fraud. A jury trial ensued. The prosecution's case against defendant hinged, to a large extent, on the testimony of Huddleston. According to his testimony, at around the time Chubb agreed to insure the Squire Hill house, defendant approached him about burning the home. He stated that he and defendant together planned the arson in great detail and that, on the day of the Squire Hill fire, pursuant to their plan, he delayed going to the house until defendant called him from his place of work in Ohio. Huddleston also testified in detail about how he burned the house and his conferences with defendant after the fire. Defendant tried to undermine the prosecution's case by suggesting that Huddleston set the fire on his own initiative because of animosity toward defendant.

During the trial, the district court dismissed . . . [two of] the counts

relating to the Musket Drive fire, for lack of evidence. The jury found defendant guilty of the remaining nine counts. . . .

(*Id.*).

Apparently, petitioner sought to appeal the Sixth Circuit's direct appeal decision by filing a petition for writ of certiorari to the United States Supreme Court. Respondent states that the Supreme Court denied the petition on October 31, 1996. (*Id.,* Brief, p. 5).

On October 30, 1996, after the Sixth Circuit issued its decision on direct appeal but before his re-sentencing, petitioner filed a 28 U.S.C. § 2255 motion for post-conviction relief with the trial court, claiming in part that under *United States v. Lopez,* 514 U.S. 549 (1995), the court lacked jurisdiction to prosecute him under 18 U.S.C. § 844(i). (*See id.,* p. 6). Petitioner's § 2255 motion was denied on September 18, 1997. (*Id.*). Both the district court and Sixth Circuit denied petitioner a certificate of appealability, which resulted in the dismissal of petitioner's appeal on June 30, 1998. (*Id.*). Petitioner apparently filed a petition for writ of certiorari to the Supreme Court, which was denied on May 25, 1999. (*Id.*).

Petitioner next filed a successive § 2255 motion with the Sixth Circuit to obtain its authorization for review by the district court. (*Id.,* p. 7). The Sixth Circuit apparently dismissed and would not reinstate the motion because petitioner failed to file "required documentation, specifically, copies of the report of the magistrate judge and the opinion of the district court issued in any prior . . . § 2255 proceeding." (*Id.*).

One month later, on June 5, 2000, petitioner filed a petition under 28 U.S.C. § 2241 with the trial court, claiming that his arson conviction under 18 U.S.C. § 844(i) had been invalidated by "two very recent decisions" of the United States Supreme Court–i.e., *Jones v. United States,* 529 U.S. 848 (2000), and *United States v. Morrison,* 529 U.S. 598 (2000). (*Id.,* Ex. 5). Petitioner specifically contended that under the authority of these recent cases, application of 18 U.S.C. § 844(i) to the arson of his "privately-owned" residence constituted an "invalid exercise of Congressional authority under the Commerce Clause." (*Id.,* pp. 1-2).

A magistrate judge issued a Report and Recommendation on August 7, 2000 recommending that the § 2241 petition be dismissed and transferred to the Sixth Circuit for review under 28 U.S.C. § 2244(b)(3) to the extent the petition was

construed as a third successive § 2255 motion. (*Id.,* Ex. 6).

In ruling on the petition, the magistrate judge noted that "petitioner's first § 2255 motion presented substantially the same claim he presents in this petition." (*Id.,* p. 3). The court continued:

> The basis of [petitioner's] present claim is that his arson conviction must be set aside because the court lacked jurisdiction to convict him under 18 U.S.C. § 844(i). . . . In support of his claim, [petitioner] relies heavily on two recent Supreme Court cases. In *Jones v. United States,* . . . the Supreme Court held that "an owner-occupied private residence not used for any commercial purpose" is not property "used in" interstate commerce, and that therefore § 844(i) does not reach such a residence under the Commerce Clause. In *United States v. Morrison,* . . . the Court held that *Lopez* requires the government to show that the regulated activity "substantially affects interstate commerce." Despite his citation to these two recently decided cases, [petitioner] previously presented the same jurisdictional challenge in his prior § 2255 proceeding, relying then on . . . *Lopez.* . . . This court rejected that argument:
>
>> Unlike the statute at issue in *Lopez,* 18 U.S.C. § 844(i) contains an express requirement that property be "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." The federal arson statute has been held to be constitutional after *Lopez* by a number of courts, including this circuit. . . . To the extent [petitioner] argues that the statute as applied to him violates *Lopez,* [petitioner's] argument ignores the fact that the property in question was rental property. Both prior to and after *Lopez*, rental property has consistently been held to constitute a sufficient nexus to interstate commerce for federal jurisdiction to attach under 18 U.S.C. § 844(i). *See e.g.* . . . *United States v. McMasters,* 90 F.3d [1394,] 1397-99 (8th Cir. 1996) (rejecting *Lopez* challenge for rental property). . . .
>>
>> [Petitioner] attempts to distinguish *McMasters* on the basis that the *McMasters* court noted in dictum that *Lopez* might

6

> have limited the reach of § 844(i) by requiring that any rental property which forms the basis of such a conviction be "used in an activity *substantially* affecting interstate commerce." *Id.* at 1398 (emphasis added). [Petitioner] argues that the Squire Hill house fails this test because it was not truly a rental property. Instead, [petitioner] had leased the house to the prior owners for a six-month period for the nominal sum of $1.00. The prior owners also had paid the defendant $237,000 for the option to buy back their home, although the defendant was entitled to keep that sum regardless of whether they exercised the option. [Petitioner] asserts that the prior owners had moved out of the house prior to the fire, arguably breaking their lease and relinquishing their control of the house. [Petitioner] argues that a lease for such a nominal amount for a six-month period cannot be viewed as "substantially affecting interstate commerce" under *Lopez*.
>
> [Petitioner's] theory that rental property leased for a nominal sum should be distinguished under *Lopez* from rental property leased for more substantial sums draws a distinction which no other court has yet drawn, and one which this court is disinclined to draw on collateral review....
>
> In sum, *Lopez* does not constitute new law which would require [petitioner's] arson conviction to be vacated. Thus, [petitioner] may not rely on *Lopez* to excuse his failure to earlier attack the interstate commerce basis of his arson conviction.

. . . . In short, this court previously rejected [petitioner's] challenge to the jurisdictional basis of his §844(i) conviction both because petitioner had committed a procedural default of the issue by failing to raise it on direct appeal . . . and because the issue was without merit because of the rental nature of the property. It is noteworthy that in *United States v. Jones,* the Supreme Court reiterated an earlier ruling that rental property (unlike an owner-occupied residence) does indeed bear a sufficient

7

>   connection to interstate commerce to support jurisdiction under
>   §844(i)....

(*Id.,* pp. 4-6) (footnote and case citations omitted).

The magistrate judge's Report and Recommendation was adopted by the district court in a Judgment entered September 7, 2000. (*Id.,* Ex. 7). On September 18, 2001, the Sixth Circuit issued an Order denying authorization for the district court to consider the petition as a successive motion to vacate under 28 U.S.C. § 2255, based on its conclusion that petitioner "is not entitled to the relief he seeks because his motion does not meet the requirements of [28 U.S.C.] §§ 2244(b) and 2255." (*Id.,* Ex. 8).

Over two years later, on November 12, 2003, petitioner filed the instant petition under 28 U.S.C. § 2241 with this Court. In the petition, petitioner claims once again as the sole ground for relief that his arson conviction must be invalidated on jurisdictional grounds in light of the Supreme Court's decision in *Jones* to the effect that 18 U.S.C. § 844(i) does not apply to private residences. (*See* Doc. 1). Petitioner also relies on the Sixth's Circuit's decisions in *Martin v. Perez,* 319 F.3d 799 (6th Cir. 2003) (*Martin I*) and *Martin v. Perez,* 391 F.3d 799 (6th Cir. 2004) (*Martin II*). (*See* Doc. 1, p. 3; Doc. 15). He contends that under *Martin I,* his claim is one of "actual innocence" that is cognizable in a 28 U.S.C. § 2241 proceeding "and is **NOT** a second or successive motion under [28 U.S.C. §] 2255." (Doc. 1, p. 3) (emphasis in original). The government argues in response that petitioner is not entitled to relief under 28 U.S.C. § 2241 because he has failed "to show that the remedy provided under 28 U.S.C. § 2255 is inadequate or ineffective and [has failed] to make a showing of actual innocence." (Doc. 6, Brief, p. 8).

## OPINION

As a general rule, a § 2241 habeas corpus petition addresses the execution of a sentence while motions filed pursuant to 28 U.S.C. § 2255 challenge the validity of a federal conviction or sentence. *Coles v. United States,* 177 F.Supp.2d 710, 711 (N.D. Ohio 2001) (citing *Capaldi v. Pontesso,* 135 F.3d 1122, 1123 (6th Cir. 1998) (in turn citing *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991)). An exception to this rule is contained in the "savings clause" set forth in the fifth paragraph of § 2255, which provides in pertinent part:

8

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

Courts construing this language "have uniformly held that claims asserted by federal prisoners that seek to challenge their convictions or imposition of their sentences shall be filed in the sentencing court under 28 U.S.C. § 2255, . . . and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241." *Charles v. Chandler,* 180 F.3d 753, 755-56 (6th Cir. 1999) (per curiam) (citations omitted). Pursuant to § 2255's "savings clause," a federal prisoner may bring a claim under § 2241 challenging his conviction or sentence only in cases where it appears the remedy afforded under § 2255 is "inadequate or ineffective to test the legality of his detention." *Id.* at 756. It is the petitioner's burden to establish that his remedy under § 2255 is inadequate or ineffective. *Id.*; *see also Pack v. Yusuff,* 218 F.3d 448, 452 (5th Cir. 2000).

Courts have found a remedy under § 2255 to be inadequate or ineffective only in extremely limited circumstances. *Pack,* 218 F.3d at 452. It is well-settled that the § 2255 remedy is not inadequate or ineffective "simply because § 2255 relief has already been denied." *Charles,* 180 F.3d at 756 (and numerous cases cited therein).[3] In addition, the fact that a petitioner may be procedurally barred from pursuing relief under § 2255, or more specifically, has been or may be denied permission to file a second or successive § 2255 petition, is insufficient to establish that the § 2255 remedy is inadequate or ineffective. *Charles,* 180 F.3d at 756; *Pack,* 218 F.3d at 452-53 (and cases cited therein); *see also Shehee v. Sanders,* 105 Fed.Appx. 10, 12 (6th Cir. June 17, 2004) (not published in Federal Reporter). As the Fifth Circuit explained in *Pack*:

> To hold otherwise would flout Congress's obvious intent to give

---

[3]*See also Pack,* 218 F.3d at 452 ("This Court and other Courts of Appeals have consistently noted that a 'prior unsuccessful [section] 2255 motion is insufficient, in and of itself, to show the inadequacy or ineffectiveness of the remedy.'") (quoting *McGhee v. Hanberry,* 604 F.2d 9, 10 (5th Cir. 1979) (per curiam)).

9

>meaning to these procedural requirements. A ruling that the section 2255 remedy was inadequate or ineffective, such that a petitioner could invoke section 2241, simply because the petitioner's prior section 2255 motion was unsuccessful, or barred, or because he could not file another motion, would render those procedural requirements a nullity and defy Congress's clear attempt to limit successive habeas petitions.

*Pack,* 218 F.3d at 453. Thus, "[t]he remedy afforded under § 2241 is not an additional, alternative or supplemental remedy to that prescribed under § 2255." *Charles,* 180 F.3d at 758.

The Sixth Circuit has recognized that "[t]hus far, the only circumstance in which this court has found § 2255 to be an ineffective or inadequate remedy is when the petition stated a facially valid claim for actual innocence." *Truss v. Davis,* 115 Fed.Appx. 772, 774 (6th Cir. Sept. 16, 2004) (not published in Federal Reporter) (citing *Bannerman v. Snyder,* 325 F.3d 722, 724 (6th Cir. 2003) ("The savings clause may only be applied when the petitioner makes a claim of actual innocence.")).[4] Indeed, in *Charles*, the court expressly noted: "No circuit court has to date permitted a post-AEDPA petitioner who was not effectively making a claim of 'actual innocence' to utilize § 2241 (via § 2255's 'savings clause') as a way of circumventing § 2255's restrictions on the filing of second or successive habeas petitions." *Charles,* 180 F.3d at 757. While withholding judgment on the question of whether an "actual innocence" claim will permit such utilization of § 2241, the court further quoted with approval the following observation made in a case by the United States Court of Appeals for the First Circuit:

>There is only one bite at the post-conviction apple unless a second or successive petition can show one of two things: a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or newly discovered

---

[4]*See also Martin v. Perez,* 391 F.3d 799, 802 (6th Cir. 2004); *Okoro v. Hemingway,* 104 Fed.Appx. 558, 559 (6th Cir. Aug. 6, 2004) (not published in Federal Reporter), *cert. dismissed,* 125 S.Ct. 923 (2005); *Lott v. Davis,* 105 Fed.Appx. 13, 15 (6th Cir. June 18, 2004) (not published in Federal Reporter), *cert. denied,* 125 S.Ct. 1103 (2005); *Shehee,* 105 Fed.Appx. at 12; *Smith v. Snyder,* 48 Fed.Appx. 109, 110-11 (6th Cir. Sept. 13, 2002) (not published in Federal Reporter); *Rumler v. Hemingway,* 43 Fed.Appx. 946, 947 (6th Cir. Aug. 21, 2002) (not published in Federal Reporter); *Coles,* 177 F.Supp.2d at 712-13.

>evidence sufficient to establish by clear and convincing evidence, on the whole record, that no reasonable factfinder would have returned a guilty verdict. A claim of actual innocence–defined as factual innocence, not mere legal insufficiency–will have a mechanism for review.

*Id.* (quoting *United States v. Barrett,* 178 F.3d 34, 57 (1st Cir. 1999), *cert. denied,* 528 U.S. 1176 (2000)).

In this case, petitioner is not challenging the execution of his sentence but rather the legality of his arson conviction. Therefore, as a general rule, he should have invoked the § 2255 remedy as opposed to the § 2241 remedy.

As discussed above, *see supra* pp. 9-10, the fact that petitioner's prior § 2255 motions raising the same issue were unsuccessful, or were found to be procedurally barred from review on the merits, does not render the § 2255 remedy inadequate or ineffective. *See Charles,* 180 F.3d at 756 (and numerous cases cited therein); *see also Pack,* 218 F.3d at 452. Moreover, the fact that petitioner most likely would be denied permission to file yet another successive motion to vacate raising the same claim is insufficient to establish that the § 2255 remedy is inadequate or ineffective. *See Charles,* 180 F.3d at 756; *Pack,* 218 F.3d a t 452-53 (and cases cited therein).

Petitioner contends that the instant § 2241 petition falls within the exception set forth in § 2255's "savings clause" because under the Supreme Court's decision in *Jones* he is actually innocent of the federal arson offense charged against him. However, assuming, without deciding, that *Jones* can be applied retroactively on collateral review of petitioner's arson conviction,[5] petitioner has not demonstrated his "actual innocence" in this case.

To establish his actual innocence, petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Martin II,* 391 F.3d at 802 (quoting *Bousley v. United States,* 523 U.S.

---

[5]In a case where the defendant's § 2255 motion was pending on appeal at the time the Supreme Court's *Jones* decision was issued, the Eighth Circuit suggested that *Jones* could be applied retroactively in deciding the appeal because *Jones* established the substantive reach of the federal arson statute rather than a new rule of criminal procedure, which under *Teague v. Lane,* 489 U.S. 288 (1989), generally may not be applied retroactively to cases on collateral review. *See United States v. Ryan,* 227 F.3d 1058, 1062-63 (8th Cir. 2000).

614, 623 (1998)). In *Martin II,* the Sixth Circuit was confronted with the same "actual innocence" issue presented here as to whether or not the property that was damaged or destroyed had a "sufficient nexus to interstate commerce" to satisfy the essential "interstate-commerce" element of the federal arson crime defined in 18 U.S.C. § 844(i). In evaluating the petitioner's claim of actual innocence, the court pointed out that the Supreme Court held in *Russell v. United States,* 471 U.S. 858 (1985), that the arson of "rental property," could be prosecuted under § 844(i), because "[t]he rental of real estate is unquestionably . . . an activity" that affects commerce. *Martin II,* 391 F.3d at 803 (quoting *Russell,* 471 U.S. at 862). The court went on to state that the "*Jones* Court did not purport to overrule *Russell* . . .; indeed, the Court distinguished its prior decision by pointing to the 'dispositive fact' in *Russell* that the '[p]etitioner was renting his apartment building to tenants at the time he attempted to destroy it by fire.'" *Id.* at 804 (quoting *Jones,* 529 U.S. at 853).

In this case, upon review of petitioner's prior § 2255 and § 2241 applications, the trial court expressly found that the "interstate-commerce" jurisdictional element of § 844(i) was satisfied because "the property in question was rental property." (*See* Doc. 6, Ex. 6). The court also expressly rejected the arguments that petitioner continues to make here to support his position that the Squire Hill property was in fact a private residence with no nexus to interstate commerce. (*Id.*). Petitioner has not presented any new evidence to rebut the court's previous findings on this issue. Therefore, petitioner's actual innocence claim, which was previously raised and resolved on the merits against him, may not be revisited by this Court. *Cf. Smith v. Reno,* 3 Fed.Appx. 403 (6th Cir. Feb. 5, 2001) (28 U.S.C. § 2241 petition, which constituted the petitioner's fourth attempt to challenge the validity of a federal detainer, was properly dismissed under the doctrine of claim preclusion); *Lanthron v. United States,* 3 Fed.Appx. 490, 491 (6th Cir. Feb. 9, 2001) (affirming district court's dismissal of claims, which had been brought in a prior action that was dismissed on the merits and affirmed on appeal, because "[u]nder the doctrine of claim preclusion, a final judgment bars any and all claims by the parties based on the same cause of action, as to every matter actually litigated, and as to every ground of recovery that could have been presented").[6]

---

[6]In any event, as the government has pointed out in its response (*see* Doc. 6, Brief, pp. 14-15), there is evidence in the record to support the sentencing court's determination that the Squire Hill property was a rental property and not an owner-occupied residence.

12

Accordingly, in sum, because petitioner is not challenging the execution of his sentence but rather the validity of his arson conviction, and because the instant § 2241 petition does not fall within § 2255's "savings clause," the Court lacks jurisdiction to grant petitioner habeas relief pursuant to § 2241.

Moreover, this Court is precluded from construing the petition at this time as a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, which would mean that the case would be subject to transfer to the Sixth Circuit for ruling as to whether petitioner's successive § 2255 motion may be considered by the district court located in the Eastern District of Kentucky.  *Cf. In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997).  The Sixth Circuit has held that particularly with respect to pro se litigants:

> [D]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized.

*In Re Shelton,* 295 F.3d 620, 622 (6th Cir. 2002) (per curiam) (quoting *Adams v. United States,* 155 F.3d 582, 584 (2nd Cir. 1998)).

Accordingly, the Court RECOMMENDS that the instant petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2241 (Doc. 1) be DISMISSED.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1) be DISMISSED.

2. A certificate of appealability should not issue, because for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this habeas corpus proceeding.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

      3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and therefore DENY petitioner leave to appeal *in forma pauperis.* *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 1/30/2006                      s/Timothy S. Hogan
   cbc                                   Timothy S. Hogan
                                    United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\03-786deny2241pet.2255savingscl.wpd

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Richard A. Warren,
    Petitioner,

                                 Case No. 1:03cv786
    v.                              (Weber, S.J.; Hogan, M.J.)

United States of America, et al.,
    Respondents.

**NOTICE**

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1(b) and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).